IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL CASE NO. 1:25-cv-314

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SUNNYBROOK REHABILITATION | ) | |
| CENTER, L.L.C., TREYBURN | ) | COMPLAINT |
| REHABILITATION CENTER, L.L.C., | ) | (Jury Trial Demanded) |
| SOUTHERN HEALTHCARE | ) | |
| MANAGEMENT, L.L.C., WELLINGTON | ) | |
| HEALTHCARE, L.L.C., and | ) | |
| CONSULATE MANAGEMENT | ) | |
| COMPANY III, L.L.C., | ) | |
| | ) | |
| Defendants. | ) | |

## __INTRODUCTION__

1.    Plaintiff John Doe brings this action against Defendants Sunnybrook

Rehabilitation Center, L.L.C. (Sunnybrook), Treyburn Rehabilitation Center,

L.L.C. (Treyburn), Southern Healthcare Management, L.L.C. (SHM), Wellington

Healthcare, L.L.C. (Wellington), and Consulate Management Company III, L.L.C.

(Consulate) (collectively, Defendants), for denying him admission to their

facilities based on substance use disorder (SUD), including past or current use, in

violation of Title III of the Americans with Disabilities Act of 1990 (ADA), 42

U.S.C. § 12182, Section 504 of the Rehabilitation Act (Section 504), 29 U.S.C. §

794(a), Section 1557 of the Patient Protection and Affordable Care Act, and the

North Carolina Unfair and Deceptive Practices Act (UDPA), N.C. Gen. Stat. § 75-1.1.

2.    Mr. Doe is a person with substance use disorder (SUD). He has been treated for SUD in several inpatient and outpatient programs.

3.    Mr. Doe also has several serious physical disabilities, including impairments of his endocrine and circulatory systems, and currently uses a wheelchair. He is currently unable to live alone and manage all aspects of his care.

4.    Mr. Doe has been hospitalized at least three times during the last two years due to his physical disabilities. During each hospitalization, the hospital's plan was to discharge Mr. Doe to a nursing home because he needed the level of care provided in a nursing home setting.

5.    During each hospitalization, social work case managers at the hospitals and Mr. Doe's family checked with nursing facilities within 50 miles to see if they had availability to admit Mr. Doe.

6.    Defendants responded to the inquiries by the hospital and Mr. Doe's family but denied Mr. Doe admission upon learning of his SUD, including past or current use.

7.    Mr. Doe was denied admission to Defendant Sunnybrook's nursing facility during his first hospitalization and was discharged instead to a group living arrangement. During his second hospitalization, Mr. Doe was denied admission to Defendant Wellington's nursing facility and was discharged to home care instead of to Wellington. Mr. Doe's medical needs were not met through home care and he was

hospitalized for a third time. During Mr. Doe's third hospitalization, Defendant Treyburn denied Mr. Doe admission to its nursing facility.

8. Mr. Doe was harmed by the Defendants' refusals to admit him. He suffered damage to his health because he did not have access to the frequency and levels of care available at Defendants' nursing facilities. He also paid out-of-pocket for services that would have been paid for by Medicaid had he been admitted to one of Defendants' facilities.

9. Following his third hospitalization, Mr. Doe was finally admitted to a nursing facility in Person County, North Carolina where he has lived since May 2024. Some of Mr. Doe's medical conditions have stabilized with 24-hour care. He is also active in the residential community and he helps plan social activities for his fellow residents as the president of an activity club.

10. However, Mr. Doe currently resides outside his home county. The nursing home is about an hour drive from his family and medical providers and Mr. Doe wants to live closer to home.

11. Mr. Doe would like to reside in any of Defendants' facilities because they are closer to his family, community, and healthcare providers, but they all have discriminatory admissions criteria and have denied him admission upon learning of his SUD, including past or current use.

12. The ADA, Section 504, and Section 1557 prohibit Defendants from denying health services to people with SUD based on their past or current illegal use of drugs and to eliminate discriminatory policies that prevent admission to their

3

facilities based on such criteria when an individual is otherwise entitled to such services.

13.     By denying Mr. Doe admission due to policies, practices, and procedures that discriminate on the basis of SUD, including past or current substance use, the Defendants violated the ADA, Section 504, and Section 1557.

14.     North Carolina public policy prohibits the denial of health services based on substance use. The practice of categorically denying access to services based on substance use violates public policy and is substantially injurious to consumers like Mr. Doe. Defendants' acts and practices violated the UDPA.

## JURISDICTION AND VENUE

15.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), 1367 (supplemental jurisdiction).

16.     Venue is proper in the Middle District of North Carolina because Mr. Doe currently lives in the district, the Defendants conduct business in the district, and a substantial part of the events or omissions giving rise to the claims occurred while Mr. Doe was hospitalized at Duke Hospital in Durham, N.C. *See* 28 U.S.C. § 1391(b).

## PARTIES

17.     Plaintiff John Doe currently resides in Person County, North Carolina, but he has lived most of his life in Raleigh, North Carolina, and his family lives in Wake County, North Carolina.

4

18. Mr. Doe has hypertension and diabetes which impair the functioning of his endocrine and circulatory systems. He has experienced multiple strokes that paralyzed the left side of his body and substantially limit his ability to move and walk.

19. Mr. Doe also has a SUD that substantially limits his major life activities of brain and neurological functioning, affecting his thinking and his ability to care for himself.

20. Defendant Sunnybrook is a nursing home located in Raleigh, North Carolina and is owned by Sunnybrook Rehabilitation Center L.L.C.

21. Defendant Treyburn is a nursing home located in Durham, N.C. and is owned by Treyburn Rehabilitation Center L.L.C.

22. Defendant Southern Healthcare Management L.L.C. manages a network of skilled nursing and rehabilitation centers throughout Florida, Georgia, and North Carolina, including Defendants Sunnybrook and Treyburn, with corporate offices in: Orlando, Florida; Atlanta, Georgia, and; Raleigh, North Carolina.

23. Defendant Wellington is a nursing home located in Knightdale, North Carolina, and is owned by Wellington Healthcare L.L.C.

24. Defendant Consulate Management Company III, L.L.C. manages a network of skilled nursing facilities in five different states and throughout North Carolina, including Defendant Wellington.

5

# FACTS

Background on SUD and Discrimination by Health Service Providers

25.     SUD is a chronic, treatable medical condition that results in changes to the brain that can persist for years or over the course of a person's life.[1] The chronic, non-linear nature of SUD means that a return to use after stopping is often part of SUD and recovery.[2] The rate of return to use is similar to recurrence rates for other chronic medical conditions.[3]

26.     Research shows that healthcare professionals commonly harbor stigma toward patients with SUD and have reported negative attitudes toward, lower regard for working with, and little motivation to care for patients with SUD.[4] Stigma toward people who use or used substances often results in suboptimal care, exclusion from services, and worse patient outcomes.[5]

---

[1] NATIONAL INSTITUTE ON DRUG ABUSE (NIDA), *Understanding Drug Use and Addiction DrugFacts* (2018),https://nida.nih.gov/publications/drugfacts/understanding-drug-use-addiction(last visited Apr. 24, 2025).

[2] NIDA, *Drugs, Brains, and Behavior: The Science of Addiction, Treatment and Recovery* (2020), https://nida.nih.gov/publications/drugs-brains-behavior-science-addiction/treatment-recovery (last visited Apr. 24, 2025); SUBSTANCE ABUSE AND MENTAL HEALTH SERVICES ADMINISTRATION (SAMHSA), *SAMHSA's Working Definition of Recovery* 1, 5 (2012) (last visited Apr. 24, 2025).

[3] NIDA, *Drugs, Brains, and Behavior*, *supra* note 2.

[4] Fong et al., *Medical Provider Stigma Experienced by People who Use Drugs (MPS-PWUD): Development and Validation of a Scale Among People Who Currently Inject Drugs in New York City*, 221 DRUG & ALCOHOL DEPENDENCE 1, 3 (2021).

[5] Van Boekel et al., *Stigma Among Health Professionals Towards Patients with Substance Use Disorders and its Consequences for Healthcare Delivery: Systematic Review*, 131 DRUG & ALCOHOL DEPENDENCE 23, 33 (2013); Ali Cheetham et al., *The Impact of Stigma on People with Opioid Use Disorder, Opioid Treatment, and Policy*, 2022:13 SUBSTANCE ABUSE & REHAB 1, 5 (2022).

6

27.     In recognition of the harms and negative health outcomes that result from stigma and discrimination, the United States Department of Justice has entered into numerous settlement agreements with nursing facilities and other types of health care entities around the country for violating the ADA by denying admission to people on the basis of their SUDs.[6]

28.     A recent medical study concluded that there is "an urgent need to address discharge barriers [for people with SUDs] such as lack of post-acute care options that contribute to unnecessarily long hospitalizations[;]" after finding that, "SUD was an independent predictor of skilled nursing facility referral failure[.]"[7] The study determined that patients with SUD were 94% more likely to have their referral denied than patients without SUD. *Id.*

WakeMed Hospital First Admission and Sunnybrook Denial

29.     On or about July 23, 2023, Mr. Doe was admitted to WakeMed Hospital for acute medical services following a stroke.

---

[6] *See generally* Settlement Agreement, United States of America v. King's Daughter Med. Ctr. (Jan. 25, 2022), *available at* https://www.justice.gov/usao-edky/press-release/file/1466206/dl (last visited Apr. 24, 2025); Settlement Agreement, United States of America v. Next Step Healthcare LLC (April 28, 2022), *available at* https://www.justice.gov/crt/case-document/file/1559476/dl (last visited Apr. 24, 2025); Settlement Agreement, United States of America v. The Oaks Nursing Facility (Dec. 22, 2021), *available at* https://www.justice.gov/usao-ma/pr/us-attorney-s-office-settles-disability-discrimination-complaint-skilled-nursing-facility (last visited Apr. 24, 2025); *see also* Press Release, *Four Skilled Nursing Facilities to Resolve ADA Violations*, U.S. ATTY'S OFF. DIST. OF MASS. (Sept. 27, 2021), https://www.justice.gov/usao-ma/pr/four-skilled-nursing-facility-entities-agree-resolve-allegations-americans-disabilities (last visited Apr. 24, 2025).
[7] Kimiam Waters, *et al.*, *Substance Use Disorder as a Predictor of Skilled Nursing Facility Referral Failure*, 1 J. GEN. INTERN. MED. 3506, 3506–08 (2022).

7

30.    Near the beginning of his hospital stay, Mr. Doe's doctors ordered that the hospital's social work case managers take steps to place him in a facility with 24-hour care for long-term rehabilitation services.

31.    Mr. Doe has health insurance through Medicaid, which would have paid for his admission to a facility for long-term rehabilitation services.

32.    The social work case managers solicited information from facilities within 50 miles of Raleigh, N.C. regarding their availability to admit Mr. Doe. On information and belief, rehabilitation and nursing facilities respond to such inquiries only if they have, or expect to have, availability.

33.    On or about July 28, 2023, a social work case manager spoke to a staff member at Sunnybrook about admitting Mr. Doe and provided Sunnybrook with access to Mr. Doe's medical records.

34.    The social work case manager disclosed Mr. Doe's SUD and history of substance use to Sunnybrook during the phone call, and the Sunnybrook staff member responded that Mr. Doe's "drug use will likely be a barrier" to admission to the facility.

35.    Sunnybrook did not offer Mr. Doe admission, and did not provide Mr. Doe with a written explanation of the admission denial.

36.    Sunnybrook did not have a grievance procedure that was easily accessible to the public and continues not to have a policy or procedure available on its website. Therefore, Mr. Doe was not given an opportunity to appeal the admission denial.

8

37. On or about August 3, 2023, without any other options, Mr. Doe accepted discharge to a group living arrangement that did not provide for his medical needs.

38. Two of Mr. Doe's doctors at WakeMed wrote in his medical chart that Mr. Doe was discharged to the group living arrangement because "patient has [a] history of substance abuse [and] was [therefore] not accepted at any facilities."

39. Only a day after his discharge, Mr. Doe's sister, Wanda, visited him at the group living arrangement and determined that her brother needed medical attention that was not available at the group living arrangement.

WakeMed Hospital Second Admission and Wellington Denial

40.  Mr. Doe was readmitted to WakeMed within a day of the August 3rd discharge for an additional six days, from August 4 to August 10, 2023.

41. Mr. Doe's doctor instructed the social work care managers to continue trying to place Mr. Doe at a facility equipped to meet his long-term rehabilitation needs.

42. Even though Mr. Doe assured the social work care managers that he had no intention to use substances at any facility, the social work care managers told Mr. Doe that no facilities in the area would admit him because they feared he might bring substances into their facilities based on his history of use and SUD.

43. During this time, Mr. Doe's sisters, Wanda and Betty, attempted on their own to locate a facility to care for their brother.

44. The hospital social workers and Mr. Doe's sisters were not able to identify a facility to care for Mr. Doe before his discharge from the hospital on August 10,

9

2023, so he was discharged to his home. However, Mr. Doe's needs could not properly be met at home.

45.     On or about August 23, 2023, Wanda spoke with a staff member at Wellington about admitting her brother. The staff member gave Wanda and Betty a tour of the facility. During the tour, they visited a vacant room and were told this room would be held open for their brother.

46.     The staff member assured the sisters that finding a space at Wellington for their brother would not be a problem because this facility quickly turned over its rooms.

47.     The sisters asked if the facility could handle their brother's physical needs. The staff member assured them that the facility would accommodate any of their brother's physical needs.

48.     On September 4, 2023, after reviewing Mr. Doe's medical records, which contained information about his SUD, the staff member abruptly reversed her prior position and denied Mr. Doe admission. The staff member sent an email to Mr. Doe's sisters stating, "I have reviewed all your brother's files and consulted with my director and we currently do not have a bed available that will meet his needs."

49.     Wellington did not have a grievance procedure that was easily accessible to the public and continues not to have a policy or procedure available on its website. Mr. Doe did not have an opportunity to appeal the admission denial.

50.     Mr. Doe and his family did not have the financial resources to pay for the around-the-clock care that he would have received at Wellington.

10

51.     From August 10, 2023 to April 16, 2024, Mr. Doe received two hours of home healthcare for five days a week through his Medicaid insurance. Mr. Doe's family arranged for additional care, paid for out of pocket, to help manage their brother's blood pressure, insulin levels, grooming needs, and in-home physical therapy and occupational therapy.

52.     Unfortunately, because he did not have access to 24-hour care, Mr. Doe's health deteriorated severely. He suffered life threatening conditions, including acute metabolic encephalopathy and type 2 diabetes mellitus with hyperosmolarity.

Duke Hospital Admission and Denial by Treyburn

53.     On or about April 16, 2024, Mr. Doe was admitted to Duke Hospital for life-threatening complications due to his diabetes.

54.     In preparation for Mr. Doe's discharge, Duke Hospital's social work case managers solicited requests for admission to nursing homes within 50 miles, including Treyburn.

55.     On or about May 2, 2024, Treyburn's staff member responded to the social work case managers' request and asked about Mr. Doe's SUD.

56.     After learning that Mr. Doe tested positive on a drug test the hospital administered upon his admission to the hospital weeks earlier, the hospital recorded that Treyburn would not admit him due to "SA use."

57.     Treyburn did not provide Mr. Doe with a written explanation of the admission denial.

11

58. Treyburn did not have a grievance procedure that was easily accessible to the public and continues not to have a policy or procedure available on its website. Mr. Doe did not have an opportunity to appeal the admission denial.

59. After the social work case managers contacted facilities throughout the state, Mr. Doe finally was admitted to a nursing home in Person County, North Carolina, which is approximately 55 miles, or one hour, away from his family and hometown in Wake County. He continues to reside at that facility.

60. On information and belief, all Defendants have policies, practices, and procedures, whether written or unwritten, that screen out people based on the fact that they have an SUD.

61. The discrimination that Mr. Doe has experienced by these Defendants is reflective of methods of administration throughout North Carolina and the nation.

62. Mr. Doe wants to transfer to any of Defendants' facilities because they are closer to his home in Wake County, North Carolina. He would do so if Defendants modify their admission policies, procedures, and practices to stop the denial of admission to people on the basis of their SUD.

63. Defendants have been advised that they are in violation of the ADA, Section 504, and Section 1557 for denying Mr. Doe admission because of his SUD status.

64. Sunnybrook responded by refusing to provide Mr. Doe with the first available Medicaid-funded room or to provide assurances that it would not make its admissions decision based on his SUD status.

65. Treyburn responded by refusing to provide Mr. Doe with the first available Medicaid-funded room or to provide assurances that it would not make its admissions decision based on his SUD status.

66. Wellington has not responded.

**FIRST CLAIM FOR RELIEF**
**(Title III of the Americans with Disabilities Act)**

67. Plaintiff refers to and incorporates by reference all foregoing allegations.

68. Mr. Doe has SUD, an impairment that substantially limits his major life activities such as thinking and caring for himself, and physical impairments that substantially limit his walking, moving, and the operation of his endocrine and circulatory systems. Therefore, he is a person with a disability under the ADA. *See* 42 U.S.C. §§ 12102, 12210(c).

69. Mr. Doe has been regarded by Defendants as having a disability—SUD—and is therefore entitled to the protections of the ADA. 42 U.S.C. § 12102.

70. Mr. Doe has been continuously qualified for Defendants' 24-hour health care and rehabilitation services since his first admission to WakeMed in July 2023. *See* 42 U.S.C. § 12111(8).

71. Defendants own, operate, and manage Sunnybrook, Wellington, and Treyburn, which are places of public accommodations subject to Title III. *See* 42 U.S.C. § 12181(7)(F); 28 C.F.R. § 36.201(a).

72. Defendants' provision of 24-hour health care and rehabilitation, directly and through their affiliates, contractors, and employees, constitute services, programs, or activities subject to Title III. *See* 28 C.F.R. § 36.201(a).

73. Title III guarantees that no qualified individual with a disability "shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a).

74. Discrimination includes denying individuals with disabilities the opportunity to "participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations" of a place of public accommodation. 42 U.S.C. § 12182(b)(A)(i); 28 C.F.R. § 36.202(a).

75. Public accommodations are prohibited from denying an individual "health services" based on "their current illegal use of drugs[,]" 42 U.S.C. § 12210(c); 28 C.F.R. § 36.209, or using administrative methods that "have the effect of discriminating on the basis of disability[,]" 42 U.S.C. § 12182(b)(1)(D); 28 C.F.R. §§ 36.204, 36.301.

76. Defendants violated Title III by intentionally refusing to admit Mr. Doe to their facilities and denying him health services due to his SUD, including past or current use. *See* 42 U.S.C. §§ 12182(b)(A)(i), 12210(c); 28 C.F.R. § 36.202(a).

77. Defendants violated Title III by relying on admission criteria and methods of administration that screen out individuals with SUDs, including past or current

substance use, from receiving their health services. *See* 42 U.S.C. §§

12182(b)(1)(D), 12210(c); 28 C.F.R. §§ 36.204, 36.301.

78. The Defendants failed and are continuing to fail to meet their obligations to

provide people with SUD full and equal access to their health services.

79. In failing to provide these services, Mr. Doe has suffered and will continue to

suffer harm: he has suffered and continues to suffer from discrimination and lack

of access to nursing facilities near his family and medical providers. If there is no

change in the status quo, Mr. Doe will be denied his right to access necessary

health care.

80. As a result of the Defendants' discriminatory actions, Mr. Doe has had to pay for

healthcare services out of pocket and accrued financial losses, and he has suffered

unnecessary pain and physical harm, including life-threatening conditions of acute

metabolic encephalopathy and type 2 diabetes mellitus with hyperosmolarity.

## SECOND CLAIM FOR RELIEF
### (Section 504 of the Rehabilitation Act)

81. Plaintiff refers to and incorporates by reference all foregoing allegations.

82. Mr. Doe has SUD, an impairment that substantially limits his major life activities

such as thinking and caring for himself, and physical impairments that

substantially limit his walking, moving, and the operation of his endocrine and

circulatory systems. Therefore, he is a person with a disability protected by

Section 504. *See* 29 U.S.C. § 794(a); 45 C.F.R. § 84.3(j).

15

83. Mr. Doe has been regarded by Defendants as having a disability—SUD—and is therefore entitled to the protections of Section 504. 29 U.S.C. § 705(20)(B).

84. Mr. Doe has been continuously qualified for Defendants' 24-hour health care and rehabilitation services since his first admission to WakeMed in July 2023. *See* 45 C.F.R. § 84.10.

85. Defendants' nursing programs provide health services reimbursed by the Medicaid program; they are recipients of Federal financial assistance from the United States Department of Health and Human Services and are subject to Section 504 and its implementing regulations. *See* 29 U.S.C. § 794; 45 C.F.R § 84.3(h).

86. Section 504 provides, "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a); *see also* 45 C.F.R § 84.68(a).

87. Discrimination includes denying health services on the basis of an individual's SUD, including past or current illegal use of drugs. *See* 45 C.F.R §§ 84.52(a)(1),84.53, 84.68(b)(1)(i), 84.69(b)(1).

88. Discrimination also includes using administrative methods "that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability" and "that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the recipient's program with respect to individuals with disabilities[.]" 45 C.F.R § 84.68(b)(3).

16

89. Defendants violated Section 504 by intentionally refusing to admit Mr. Doe to their facilities and denying him health services due to his SUD, including past or current use. *See* 42 U.S.C. §§ 12182(b)(A)(i), 12210(c); 45 C.F.R §§ 84.52(a)(1), 84.53, 84.68(b)(1)(i), 84.69(b)(1).

90. Defendants violated Section 504 by relying on admission criteria and methods of administration that screen out individuals with SUDs, including past or current substance use, from receiving their medical services. *See* 45 C.F.R §§ 84.53, 84.68(b)(3), 84.69(b)(1).

91. Defendants also violated Section 504 by failing to notify Mr. Doe of a means to file a disability discrimination grievance after denying him admission based on his SUD. *See* 45 C.F.R. § 84.7(b).

92. The Defendants failed and are continuing to fail to meet their obligations to provide people with SUD full and equal access to their health services.

93. In failing to provide these services, Mr. Doe has suffered and will continue to suffer harm: he has suffered and continues to suffer from discrimination and lack of access to nursing facilities near his family and medical providers. If there is no change in the status quo, Mr. Doe will be denied his right to access necessary health care.

94. As a result of the Defendants' discriminatory actions, Mr. Doe has had to pay for healthcare services out of pocket and accrued financial losses, and he has suffered unnecessary pain and physical harm, including life-threatening conditions of acute metabolic encephalopathy and type 2 diabetes mellitus with hyperosmolarity.

## THIRD CLAIM FOR RELIEF
### (Section 1557 of the Patient Protection and Affordable Care Act)

95.   Plaintiff refers and incorporates by reference all foregoing allegations.

96.   Mr. Doe has SUD, an impairment that substantially limits his major life activities such as thinking and caring for himself, and physical impairments that substantially limit his walking, moving, and the operation of his endocrine and circulatory systems. Therefore, he is a person with a disability protected by Section 1557. *See* 45 C.F.R. § 92.4.

97.   Mr. Doe has been regarded by Defendants as having a disability—SUD—and is therefore an individual with a disability within the meaning of Section 1557. *See* 45 C.F.R. § 92.4.

98.   Mr. Doe has been continuously qualified for Defendants' 24-hour health care and rehabilitation services since his first admission to WakeMed in July 2023. *See* 45 C.F.R. § 92.4.

99.   Defendants are covered entities that own, operate, and/or manage nursing homes that provide health-related activities and receive Federal financial assistance from the United States Department of Health and Human Services; they are subject to Section 1557 and its implementing regulations. *See* 45 C.F.R. § 92.4.

100.  Section 1557 prohibits discrimination on the basis of disability in any health program or activity, any part of which receives Federal financial assistance. 42 U.S.C. § 18116. The nondiscrimination standards under Section 1557 are at least as stringent as the standards under Section 504. 45 C.F.R. § 92.3(a).

101. Discrimination includes denying health services on the basis of an individual's SUD, including past or current illegal use of drugs. *See* 45 C.F.R. 84.52(a)(1), 84.53, 84.68(b)(1)(i), 84.69(b)(1). Discrimination also includes using administrative methods that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability and that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the recipient's program with respect to individuals with disabilities. 45 C.F.R §§ 92.202, 84.68(b)(3).

102. Defendants violated Section 1557 by intentionally refusing to admit Mr. Doe to their facilities and denying him health services due to his SUD, including past or current use. *See* 45 C.F.R §§ 84.52(a)(1), 84.53, 84.68(b)(1)(i), 84.69(b)(1).

103. Defendants violated Section 1557 by relying on admission criteria and methods of administration that screen out individuals with SUDs, including past or current substance use, from receiving their medical services. *See* 45 C.F.R §§ 84.53, 84.68(b)(3), 84.69(b)(1).

104. The Defendants failed and are continuing to fail to meet their obligations to provide people with SUD full and equal access to their health services.

105. In failing to provide these services, Mr. Doe has suffered and will continue to suffer harm: he has suffered and continues to suffer from discrimination and lack of access to nursing facilities near his family and medical providers. If there is no change in the status quo, Mr. Doe will be denied his right to access necessary health care.

19

106. As a result of the Defendants' discriminatory actions, Mr. Doe has had to pay for healthcare services out of pocket and accrued financial losses, and he has suffered unnecessary pain and physical harm, including life-threatening conditions of acute metabolic encephalopathy and type 2 diabetes mellitus with hyperosmolarity.

## FOURTH CLAIM FOR RELIEF
### (NC Unfair and Deceptive Practices Act)

107. Defendants engage in business activities and commerce, as defined by the North Carolina Unfair and Deceptive Practices Act, N.C. Gen. Stat. § 75-1.1.

108. A practice is "unfair" if it violates public policy or is substantially injurious to consumers.

109. North Carolina public policy prohibits the conduct engaged in by Defendants:

   a. "The policy of the State is to assist individuals with needs for mental health, developmental disabilities, and substance abuse services in ways consistent with the dignity, rights, and responsibilities of all North Carolina citizens." N.C. Gen. Stat. § 122C-2.

   b. "It is further the policy of this State that each client who is admitted to and is receiving services from a facility has the right to treatment, including access to medical care and habilitation, regardless of age or degree of mental illness, developmental disabilities, or substance abuse." N.C. Gen. Stat. § 122C-51.

110. Mr. Doe is a consumer and sought services from Defendants.

111. Defendants engaged in unfair practices in or affecting commerce by refusing service to Mr. Doe, thereby violating public policy and engaging in conduct that is substantially injurious to consumers. *See* N.C. Gen. Stat. § 75-1.1.

112. Mr. Doe has been harmed and suffered damages as a result of Defendants' conduct in violation of N.C. Gen. Stat. § 75-1.1.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully request that the Court grant the following relief:

1. Declare that Defendants violated the ADA, Section 504, and Section 1557 by denying Plaintiff admission to their facilities because of his SUD, including past or current use, and relying on methods of administration that screen out individuals with SUD from admission.

2. Declare that Defendants violated Section 504 by failing to provide Mr. Doe with a grievance process after denying him admission to their facilities.

3. Enjoin Defendants from continuing to violate the ADA, Section 504, and Section 1557.

4. Declare that Plaintiff was harmed by Defendants' unfair practices in violation of the North Carolina Unfair and Deceptive Practices Act.

5. Enter judgment in Plaintiff's favor and in an amount to be determined at trial for damages available under Section 504 and Section 1557.

6. Enter judgment in Plaintiff's favor and in an amount to be determined at trial for his damages available under the North Carolina Unfair and Deceptive Practices Act.

21

7.    Afford Plaintiff a trial by jury.

8.    Award Plaintiff the costs of this action and reasonable attorneys' fees pursuant to
      42 U.S.C. §§ 1988, 12205, 18116 and  N.C. Gen. Stat. § 75.1-16.

9.    Provide such other and further relief as the Court deems to be just and equitable.

This the 24th day of April, 2025.                Respectfully submitted,

                                                 /s/ Holly Stiles
                                                 Holly Stiles
                                                 N.C. State Bar No. 38930
                                                 Christopher A. Hodgson
                                                 N.C. State Bar No. 50135
                                                 Sara Harrington
                                                 N.C. State Bar No. 28565
                                                 DISABILITY RIGHTS NC
                                                 801 Corporate Center Drive, Suite 118
                                                 Raleigh, NC  27607
                                                 Phone: (919) 856-2195
                                                 Fax: (919) 856-2244
                                                 holly.stiles@disabilityrightsnc.org
                                                 chris.hodgson@disabilityrightsnc.org
                                                 sara.harrington@disabilityrigthsnc.org

                                                 /s/ Sally Friedman
                                                 Sally Friedman *
                                                 N.Y. State Bar No. 2474948
                                                 Rebekah Joab *
                                                 N.Y. State Bar No. 5818448
                                                 Legal Action Center
                                                 225 Varick St, 4th Floor
                                                 New York, NY 10014
                                                 Phone: (212) 243-1313
                                                 Fax: (212) 675-0286
                                                 sfriedman@lac.org
                                                 rjoab@lac.org

                                                 ATTORNEYS FOR PLAINTIFF

                                                 * special appearance forthcoming