IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL CASE NO. 1:25-cv-314-UA-JEP

| | |
|---|---|
| JOHN DOE,<br><br>　　　　Plaintiff,<br><br>v.<br><br>SUNNYBROOK REHABILITATION CENTER, L.L.C., TREYBURN REHABILITATION CENTER, L.L.C., and SOUTHERN HEALTHCARE MANAGEMENT, L.L.C.,<br><br>　　　　Defendants. | PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO PROCEED USING PSEUDONYMS |

Plaintiff John Doe, by and through undersigned counsel, respectfully submits this Reply in Support of his Motion for Leave to Proceed Using Pseudonyms pursuant to Local Civil Rule 7.3(h). Plaintiff seeks the Court's permission to use pseudonyms to protect his access to medically necessary 24-hour care, while attempting to address discrimination that displaced him from his home county and family. He is in the vulnerable position of confronting prevalent bias and stigma within the industry he relies on for his continued physical well-being.

Defendants suggest, without providing a basis, that any nursing facility evaluating Plaintiff for admission, now or in the future, will necessarily learn information about his SUD from his medical records. Not only is this assertion speculative, but it ignores that this litigation will elicit broader information than that contained in a medical record, which nursing facilities would not otherwise be privy to. Additionally, Defendants ignore that using Plaintiff's real name in this lawsuit will make his SUD – and any other private information that comes out in the litigation – known not only to nursing facilities but to

1

the public writ large. Defendants' position would magnify the impact of the discrimination Plaintiff experiences.

Plaintiff respectfully reaffirms his request that the Court grant his motion and permit him to proceed using pseudonyms.

## ARGUMENT

The parties agree that there are five factors courts typically consider and weigh when determining whether to grant anonymity: (1) will anonymity "preserve privacy in a matter of sensitive and highly personal nature," (2) is there a significant "risk of retaliatory physical or mental harm" if the requester's identity is made public, (3) what is the "age of the persons" seeking anonymity, (4) what harms are there "against a [named] governmental or private party," and (5) what is the "risk of unfairness" to the other party if anonymity is granted. *Doe v. Pub. Citizen*, 749 F.3d 246, 273 (4th Cir. 2014) (citing *James v. Jacobson*, 6 F.3d 233, 238) (4th Cir. 1993).

When the five factors are properly considered and weighed, they support granting Plaintiff's request for anonymity. An individual's SUD status is highly sensitive and personal and Defendants cited to no contrary evidence. Plaintiff demonstrates actual harm results when he discloses his SUD status; Defendants and other nursing facilities denied him admission, his condition worsened without the level of care offered in nursing facilities, and he was re-hospitalized. The harm he experiences when his providers learn of his SUD status should counsel for – not against – offering him the protections of anonymity. The mere fact that Plaintiff is an adult does not weigh against

his request for anonymity. The Defendants' names are already in the public domain and they fail to explain how they will suffer additional or unique reputational, financial, staffing, and regulatory harms if Plaintiff is allowed to proceed pseudonymously. Finally, allowing Plaintiff to proceed pseudonymously will not work any unfairness on Defendants – they already know Plaintiff's true identity and do not deny that a protective order would facilitate the conduct of discovery. Plaintiff respectfully submits that the Court should grant his motion to proceed pseudonymously.

### I. Factor 1: Plaintiff's SUD Is A Highly Personal Matter Because of Persistent Bias And Stigma Against Individuals With SUD.

Plaintiff requires anonymity because there is persistent bias and stigma against individuals with SUD. The first factor for determining if a pseudonym is warranted requires answering whether the person requesting anonymity is doing so "to preserve privacy in a matter of sensitive and highly personal nature." *Jacobson*, 6 F.3d at 238. Plaintiff provided legal and factual support for why his SUD is both highly sensitive and subject to persistent bias and stigma. (*See* ECF No. 15 at 3-5.)

Defendants do not address the first factor and instead begin their discussion with the second factor: to what extent Plaintiff would be harmed without a pseudonym. (*See* ECF No. 23 at 4-7.) Defendants have failed to meaningfully discuss whether Plaintiff's SUD is a highly personal and sensitive matter, so this factor should be deemed conceded by Defendants.

The only point Defendants make regarding the first factor is a general objection to Plaintiff's citation to *A Helping Hand, LLC v. Balt. Cnty.*, 515 F.3d 356 (4th Cir. 2008) in

3

support of his motion, a case in which the plaintiffs used pseudonyms to protect against SUD-based stigma. While it is true the Fourth Circuit's decision did not address the five factors, the court clearly permitted the plaintiffs to appear under pseudonyms.[1] Moreover, Defendants do not dispute the several other cases Plaintiff cited, supporting the use of pseudonyms where SUD and mental health were at issue or the proposition that SUD is a condition in which people often experience bias and stigma. As such, the Court should find that Plaintiff demonstrates the first factor, that SUD is a highly sensitive and personal matter.

## II.     Factor 2: Plaintiff Is At Risk Of Experiencing Harm Without Anonymity.

Plaintiff requires anonymity to protect his access to 24-hour care and any other health care he may need. The second factor requires answering whether public disclosure of the requester's identity poses a "risk of retaliatory physical or mental harm." *See Pub. Citizen*, 749 F.3d at 273. This standard requires showing more than a bare assertion of harm, though there are additional circumstances in which anonymity is still appropriate when the standard is not met. *See Doe v. Mass. Inst. of Tech.*, 46 F.4th 61, 73 (1st Cir. 2022) (showing a reasonable and severe amount of potential harm is only one paradigm of cases in which courts have granted anonymity). Plaintiff's past experiences establish that a risk of harm to him when his SUD status is disclosed is the denial of care. He is in

---

[1] Defendants argue that *A Helping Hand* is distinguishable from Plaintiff's situation because the plaintiffs proceeding under pseudonyms in that case joined after the litigation commenced. (*See* ECF 23 at 7.) This point is irrelevant. Nothing in the five factors considers whether plaintiff's pseudonymous protection depends on when they joined a lawsuit.

4

a vulnerable medical situation; he relies on 24-hour care within an industry that regularly discriminates against patients with SUD. (*See* ECF No. 15 at 3-5.) Permitting Plaintiff to proceed using a pseudonym to avoid compounding the very real harms he experiences when his SUD status is disclosed is reasonable.

Defendants ignore the bias and stigma that Plaintiff already experienced at their hands and other nursing facilities. Plaintiff cycled in and out of hospitals in recent years because he lacked access to 24-hour care. Each time, the hospital planned to discharge him to a nursing home setting, but the social workers could not locate a nursing facility within 50 miles that would take him due to persistent bias and stigma against admitting patients with SUD. (ECF No. 1 at ¶¶ 2-11.) The fact that it took multiple hospital visits over two years to locate a single, distant nursing facility willing to admit Plaintiff notwithstanding his SUD underscores the precariousness of his current situation, and supports taking steps to avoid unnecessarily jeopardizing his access to 24-hour care and any other healthcare he might need, by allowing him to proceed anonymously.

While Defendants assert that Plaintiff has not alleged "any disruptions to his current care" (ECF No. 23 at 8), that misses the point. As noted above, he alleged discrimination by numerous nursing facilities based on his SUD, and the genesis of this lawsuit is Plaintiff's desire to move from a distant nursing home about an hour drive from his family and medical providers to one that is closer to his long-time home in Wake County. (*See* ECF No. 1 at ¶¶ 2-10, 61-62.) Moreover, Defendants cannot simply dismiss the research Plaintiff cites as "general information" when his own experience bears it out.

The research actually cements that the risk of harm to patients like Plaintiff, who are "94% more likely to have their skilled nursing referrals denied than patients without SUD" because "healthcare professionals commonly harbor stigma toward patients with SUD," is significant. (*See* ECF No. 1 at ¶¶ 26, 28.) Given the high percentage of bias and stigma in the industry, if nursing facilities have access to additional facts about his SUD through this lawsuit, Plaintiff's ability to move closer to home will be jeopardized.

Defendants also impliedly request that the Court expand the second factor and require Plaintiff to show that he is at risk of harm if his identity is public *and* that with pseudonymous protection, his private health information would never become known to anyone who could use it negatively. (*See* ECF 23 at 8) ("Allowing Plaintiff to hide his identity in this litigation would not overcome the reality that Plaintiff cannot hide his medical records from a nursing facility.") Defendants provide no caselaw support for this argument or facts from which to assume unknown nursing facilities will learn the same information about Plaintiff's SUD known to Defendants if he needs care at later points in his life. Additionally, discovery is not limited to the four corners of a medical record. If Plaintiff proceeds without anonymity his current nursing facility and all others will not just have his medical records but all of the evidence outside of his medical records that emerges in this lawsuit. Such information will likely contain substantially more sensitive details about his substance use than diagnostic codes or the other snippets of information that may be contained in medical records. While a pseudonym cannot fully insulate Plaintiff from bias and stigma, anonymity will at least prevent the facilities from

6

obtaining new facts they would ordinarily not have access to. *See Doe v. Mass. Inst. of Tech.*, 46 F.4th at 71 ("A deterrence concern typically arises in cases involving 'intimate issues such as . . . medical concerns[.]'" (internal citations omitted).

Plaintiff's asserted harms are reasonable and serious. He experienced multiple hospitalizations and estrangement from his home county because of persistent bias and stigma in the skilled nursing industry. Granting him anonymity will offer him protection against further bias.

### III. Factor 3: Plaintiff's Adult Age Is A Neutral Factor.

Plaintiff's age is a neutral factor that does not outweigh or diminish the other factors. The third factor requires courts to consider the age of the individual requesting anonymity. The ability to proceed anonymously is not limited to any particular age group, though child litigants are all but guaranteed to be allowed to proceed anonymously. *See Jacobson*, 6 F.3d at 238-239 (adopting the third factor from *Doe v. Stegall*, 653 F.2d 180, 185-186 (5th Cir. 1981) ("A final factor we find especially persuasive is the fact that plaintiffs are children. The law of Mississippi and, as in many other states as well, shields the identities of child-litigants from public disclosure[.]")). Federal procedural rules formalized the third factor and now require litigants to automatically shield the identity of minors. *See* Fed. Rul. Civ. Pro Rule 5.2(a)(3) (requiring litigants to use initials when referencing all known minors in filings).

Defendants rely on *Doe v. Doe*, 85 F.4th 206, 214-215 (2023) in arguing that Plaintiff's adult age should be treated as a negative factor, but the Fourth Circuit did <u>not</u>

7

Case 1:25-cv-00314-UA-JEP     Document 26     Filed 06/12/25     Page 7 of 14

actually reach this issue in the case because the appellant did not appeal this issue. Defendants provide no other case law supporting their argument that Plaintiff's age affects his ability to proceed anonymously. Plaintiff's adult age is a neutral factor and is not dispositive in this motion.

IV. **Factor 4: Plaintiff's Personal Medical Considerations Outweigh Whatever General Harms Defendants May Experience By Being Named Parties.**

Plaintiff's asserted harms are personal and medical in nature and outweigh the conjectural harms that Defendants contend they may experience by being named in the lawsuit. Factors two and four are closely related. While factor two considers the risk of harm to a person requesting anonymity, factor four considers the harms other parties experience by being identified in the lawsuit and contrasts if the harms are substantially different. *See James v. Jacobson*, 6 F.3d at 238-239 (adopting fourth factor from *S. Methodist Univ. Ass. Of Women's Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979) (holding that the asserted harms between the opposing parties were similar—both were at risk of financial and reputational harms if named)).

Defendants' putative harms are reputational, financial, staffing, and regulatory, though Defendants offer no particularized support that these harms are realistic. (*See* ECF No. 23 at 11). Whereas Plaintiff's harms are existential in nature and relate to his continued physical well-being. Even assuming the harms Defendants assert are reasonable, they are significantly outweighed by the medical privacy concerns safeguarded in factor two. *See Doe v. Univ. of Md. Sys. Corp.,* No. 23-CV-3318, 2024

U.S. Dist. LEXIS 66982, *8 (D. Md. April 12, 2024) (declining to assign any weight to factor four when pressing medical privacy considerations are present).

Defendants rely heavily on a single district court case – *Doe v. Indiana Black Expo, Inc.*, 923 F. Supp. 137, 139 (S.D. Ind. 1996) – to argue "fairness dictates that an accuser who wishes to bring a lawsuit against a private party must do so under his real name, especially when the defendant is forced to litigate under its real name." (*See* ECF No. 23 at 10.) Factually, *Doe v. Indiana Black Expo, Inc.* is distinguishable because the plaintiff's asserted harms were "his economic well-being and possible embarrassment or humiliation." 923 F. Supp. at 142. In other words, the plaintiff's interests were materialistic, like the Defendants in this case, and not a threat to his health. The Fourth Circuit explicitly rejected this tit-for-tat approach to anonymity, emphasizing instead that all five factors are weighed in a holistic, context-specific manner. *See Doe v. Sidar*, 93 F.4th 241, 248 (4th Cir. 2024) ("This Court has never endorsed [that fairness requires both parties or no parties to use pseudonyms], which would stray from the 'particularized assessment of the equities.'"). Fairness is weighed in the Fourth Circuit by actually considering and comparing the asserted harms between the parties. Fairness dictates granting Plaintiff's anonymity request because the risk of harm to his health significantly outweighs the materialistic harms Defendants may experience by being named parties.

V. **Factor 5: There Are No Serious Fairness Concerns With Granting Plaintiff's Request For Anonymity.**

Fairness principles weigh in favor of granting Plaintiff's request to use a pseudonym for himself and refer to his family members by first names only. Factor five

considers fairness and administrability concerns with the proceedings. *Jacobson*, 6 F.3d at 238-239. Plaintiff's anonymity request will ensure the parties are free to provide the public with robust sensitive details about Plaintiff's SUD without jeopardizing his care, and will not limit Defendants' ability to litigate. (*See* ECF No. 15 at 6-7.) A protective order should address any concerns Defendants may have about the ability to obtain and introduce evidence.

Defendants' argument that the public is best served by naming Plaintiff because open judicial proceedings benefit the public, (ECF No. 23 at 14), fails to balance the privacy and risk concerns in factors one and two. With a medically sensitive case such as this, the public is best served with the use of pseudonyms for judicial proceedings. *See Doe v. Univ. of Md. Sys. Corp.* at *9 (denying motion to seal the case but allowing Plaintiff to proceed using pseudonyms for herself and family members to balance medical concerns with the public's interest in open judicial proceeding).

Defendants also contend anonymity may confuse discovery, but rely on a factually distinguishable case, *Doe v. Doe*, in which the case caption and allegations in the complaint were facially confusing due to the use of initials for several key witnesses and "Sue Roe" for another. 85 F.4th at 216 (district court noting that confusion "stems not only from [Plaintiff's] use of pseudonym for himself, but also from [his] use of pseudonyms and initials throughout the complaint."). The same concerns do not exist here. Plaintiff is the only "Doe" in this case and his sisters will use their first names to avoid any confusion.

10

Case 1:25-cv-00314-UA-JEP    Document 26    Filed 06/12/25    Page 10 of 14

Discovery will not be overly complicated because Defendants already know Plaintiff's identity through pre-litigation disclosures. (*See* ECF No. 1, ¶¶ 63-65) (alleging that Plaintiff advised Sunnybrook and Treyburn they had violated his rights and Defendants responded by refusing to remedy the discrimination). Defendants also implicitly admit to knowing Plaintiff's true identity by arguing that any facilities Plaintiff requested admission to, including their own, already know his identity. (*See* ECF No. 23 at 2, 5.)

There are also no legitimate trial complications. Defendants argue that unless witnesses are identified by name, their cross-examination is unreliable, citing two district court cases outside of the Fourth Circuit. But the Fourth Circuit has made it clear that pseudonymity does not make a cross-examination less reliable, holding:

> With the fact of pseudonymity known to the jury, we think this would open to defendant every opportunity to impeach the credibility of the Jameses as witnesses that is ordinarily available through revelation of such personal matters as the occupation, place of residence, and the like, of witnesses testifying under their true names. Demeanor is demeanor, however the witness is identified, and it would seem to make no difference to a jury in assessing whether such things as the particular occupation or place of residence of a witness might bear upon his credibility whether the witness bore the name John Smith or Henry Williams.

*Jacobson*, 6 F.3d at 242.

Moreover, it seems obvious that a jury would attribute Plaintiff's use of pseudonyms to the fact this case involves highly personal details about his SUD. But if "subliminal prejudices" ever materialize above the level of speculation, Defendants may

revisit the issue of anonymity with facts to support their concerns. *See Doe v. St. Edward High Sch.*, No. 22-CV-440, 2022 U.S. Dist. LEXIS 123849, *11 (N.D. Ohio July 13, 2022) (observing that defendants may always request the court to later revisit if anonymity is necessary as litigation progresses).

Plaintiff's anonymity poses no real threat to the fairness of judicial proceedings. Accordingly, factor five weighs in favor of granting anonymity.

## CONCLUSION

Plaintiff's request to protect his identity from public disclosure is warranted because he is currently unable to live alone and manage all aspects of his care and is subject to persistent bias and stigma because of his SUD. Plaintiff demonstrates all five factors but these ongoing, existential medical considerations should weigh heavily in the Court's consideration of whether to grant him anonymity. Plaintiff respectfully reiterates his request that the Court grant Plaintiff's Motion for Leave to Proceed Using Pseudonyms.

This the 12th day of June, 2025.

Respectfully submitted,

/s/ Christopher A. Hodgson
Holly Stiles
N.C. State Bar No. 38930
Christopher A. Hodgson
N.C. State Bar No. 50135
Sara Harrington
N.C. State Bar No. 28565
DISABILITY RIGHTS
NORTH CAROLINA
801 Corporate Center Drive, Suite 118

Raleigh, NC  27607
Phone: (919) 856-2195
Fax: (919) 856-2244
holly.stiles@disabilityrightsnc.org
chris.hodgson@disabilityrightsnc.org
sara.harrington@disabilityrightsnc.org


/s/ Rebekah Joab
Rebekah Joab*
N.Y. State Bar No. 5818448
Sally Friedman*
N.Y. State Bar No. 2474948
LEGAL ACTION CENTER
225 Varick St, 4th Floor
New York, NY 10014
Phone: (212) 243-1313
Fax: (212) 675-0286
rjoab@lac.org
sfriedman@lac.org
*by S*pecial Appearance*

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF WORD COUNT

Counsel of Record hereby certifies pursuant to Local Rule 7.3(d)(1) that the foregoing memorandum of law contains less than 3,125 words. Counsel relies upon the word count feature of word processing software in making this certification.

Date: June 12, 2025

Respectfully submitted,

/s/ Christopher A. Hodgson
Christopher A. Hodgson
N.C. State Bar No. 50135